**SIGNED THIS: November 05, 2009**

_____
**MARY P. GORMAN**
**UNITED STATES BANKRUPTCY JUDGE**
_____


UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | In Bankruptcy |
| | ) | |
| BRIAN TALBOTT HILL, | ) | Case No. 08-71399 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| JEFFREY D. RICHARDSON, | ) | |
| Chapter 7 Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 08-7102 |
| | ) | |
| SHANE R. SPEAGLE, | ) | |
| | ) | |
| Defendant. | ) | |

## O P I N I O N

This case is before the Court for decision after trial of an adversary complaint filed by the Chapter 7 Trustee, Jeffrey D. Richardson ("Trustee"), against Shane R. Speagle.   Trustee claims

that, because Mr. Speagle was a partner in Team Automotive with Brian Hill ("Debtor"), Mr. Speagle owes the Debtor's bankruptcy estate $97,038 to equalize partnership contributions and draws. Having considered the testimony of the parties, the exhibits introduced into evidence at trial, and the post-trial written arguments submitted by both parties, this Court finds that the Trustee has failed to meet his burden of proof and, therefore, the adversary case must be dismissed with prejudice.

Prior to his bankruptcy filing, the Debtor was engaged in a business with Mr. Speagle selling used cars in Decatur, Illinois. The Debtor and Mr. Speagle commenced doing business as Team Automotive in July 2007. On June 28, 2007, they entered into a General Partnership Agreement ("Partnership Agreement") which detailed how they intended to fund the business and conduct operations. Unfortunately, the business did not do well and, by May 2008, the business was closed. The Debtor and Mr. Speagle signed a Termination of Partnership Agreement ("Termination Agreement") on May 12, 2008. The Debtor filed his voluntary petition under Chapter 7 on June 6, 2008.

The Trustee filed his adversary complaint against Mr. Speagle on October 14, 2008. The Trustee alleged that the Debtor "invested" $162,700 in Team Automotive and made withdrawals of $98,000 from the business during the time that it was in operation. He also alleged that Mr. Speagle "invested" $15,162 in the business

and withdrew $47,500 from it.  The Trustee concluded that, because the Debtor withdrew $64,700 less than he put into the business, and Mr. Speagle withdrew $32,338 more than he put in, Mr. Speagle owed the Debtor's bankruptcy estate $97,038.

Mr. Speagle filed an answer denying all of the material allegations of the adversary complaint.  Trial was held June 30, 2009.  The parties were allowed an opportunity to file post-trial briefs on the legal issues raised at trial.  The briefs have been filed, and the matter is now ready for decision.

The Trustee's position is that Mr. Speagle has a legal obligation to equalize the sums paid into and taken out of the partnership accounts by the two partners.  In opening arguments, the Trustee acknowledged that, mathematically, an equalization would occur if Mr. Speagle were required to pay to the Debtor's estate half of the amount originally claimed and, therefore, reduced his demand to $48,500.

At trial, the Trustee called the Debtor as a witness and, through the Debtor, introduced three exhibits into evidence. First, the Trustee introduced the Partnership Agreement.  The Partnership Agreement provides generally for a 50/50 partnership arrangement.  The Partnership Agreement states that the Debtor made a $10,000 investment into the business and that to "equal out the partnership" Mr. Speagle agreed to pay $5000 directly to the Debtor.  The partners agreed that the Debtor would borrow at least

$85,000 and Mr. Speagle would borrow approximately $30,000 for business operations.  They also agreed that the business would make the minimum monthly payments due individually by each partner on the borrowed funds, and that any further accelerated payment of the debts would be determined by the future agreement of the partners.  The partners also agreed that they would each receive a monthly salary, and set their initial salaries at $2000 for August 2007 and at $5000 per month thereafter.

The Trustee's second exhibit was a handwritten document prepared by the Debtor detailing the amounts paid into and taken out of the partnership by each partner.  The document showed total payments in by Mr. Speagle of $15,162 and total disbursements to him of $47,500.  For the Debtor, the payments into the partnership totaled $162,700 and the disbursements totaled $98,000.  The Debtor testified that he had prepared the document from the books and records of the partnership, and vouched for its accuracy as to the gross amounts put in and taken out by each partner.  He also acknowledged that the last distribution of cash from the partnership in the amount of $29,000 had been taken by him in April 2008, and had been used by him to go to Las Vegas to try to win enough money to pay off the significant credit card debt he had incurred to fund the business.  The Debtor admitted that the Las Vegas trip had not gone as planned, and that he had lost the entire $29,000.

-4-

The Termination Agreement was the third exhibit identified by the Debtor and introduced by the Trustee. The Termination Agreement provided for the Debtor to "settle all debts" and otherwise wind up the partnership affairs. The Debtor received possession of all remaining partnership property. In the Termination Agreement, the partners acknowledged that the business debts exceeded the remaining partnership assets and agreed that each had "received their final money from the business and that no further monies will be distributed to either."

On cross-examination by Mr. Speagle who appeared *pro se*, the Debtor stated that, upon the termination of the partnership, he understood that he was individually liable for the money he had borrowed from credit cards and other sources to fund the business. He stated that he understood that the money he borrowed to fund the business was his responsibility and that was the reason that he took the last $29,000 of partnership funds and went to Las Vegas.

On re-direct examination, the Trustee asked the Debtor if he and Mr. Speagle had agreed to "kick in 50/50". The Debtor stated that was not their agreement. The Trustee then asked the Debtor if the agreement was that the Debtor would get back his borrowed funds "if there was a profit." The Debtor responded that was the agreement. The Debtor also confirmed in response to the Trustee's questioning that one reason for entering into the Termination Agreement was that Mr. Speagle "had no money."

-5-

The Trustee called Mr. Speagle as his second witness at trial. Mr. Speagle confirmed that the amounts shown on the Debtor's handwritten accounting of the gross amounts of money in and money out to the partners appeared to be correct. After the Trustee rested, Mr. Speagle testified on his own behalf and stated that both partners always knew and agreed that funds individually borrowed for business operations would be paid back only from anticipated business income and profits. On cross-examination, the Trustee confirmed the understanding of Mr. Speagle that the borrowed funds would be paid back if the business was successful.

In support of his claims against Mr. Speagle, the Trustee relies on the Illinois Uniform Partnership Act ("IUPA"). 805 ILCS 206/100 *et seq.* The Trustee acknowledges that, generally, partnership agreements control the relationship among partners, and that the IUPA controls only to the extent that a partnership agreement does not exist or fails to address a particular issue. 805 ILCS 206/103(a). The Trustee argues that neither the Partnership Agreement nor the Termination Agreement altered the rights of the partners here in any significant way from what those rights would be under the IUPA. The Court disagrees, and finds that both agreements provide important details of the partners' relationship which must be considered.

The Trustee asserts in his complaint and his arguments that this Court should complete an analysis of the partners' capital

accounts by taking the gross amounts paid into the partnership by each, and subtracting from those amounts the gross amounts paid out to each partner.  The Trustee says that this calculation is required by §401(a) the IUPA.  805 ILCS 206/401(a).  The statute does not, however, compel such a calculation.

Section 401(a) of the IUPA requires that a capital account be calculated first by considering the amount that a partner "contributes" to the partnership.  805 ILCS 206/401(a)(1).  Here, the partners specifically agreed in the Partnership Agreement that their investment would be a total of $10,000, with all of that amount being initially contributed by the Debtor and with Mr. Speagle paying the Debtor $5000 directly over time to equalize their capital accounts.[1]  The partners referred to the additional money that would be borrowed to fund operations as loans.  There is no authority to find that the funds borrowed by each partner were additional capital contributions.  To the contrary, the IUPA specifically provides that advances made to a partnership "beyond the amount of capital the partner agreed to contribute" shall constitute loans to the partnership.  805 ILCS 206/401(d)-(e); *see also* <u>Spencer v. Riordan</u>, 240 Ill.App.3d 938, 946, 608 N.E.2d 432,

---

[1]
    No evidence was presented about whether Mr. Speagle actually paid the $5000 directly to the Debtor.  However, the Trustee made no separate claim for that amount, and, therefore, this Court will assume that the amount was paid and that the capital contributions were equalized as intended.

438 (1992) (additional payments made by two of three partners which exceeded originally agreed upon capital contributions were loans).

The Trustee has also argued that all amounts paid out to the partners should be considered as withdrawals to be charged against their capital accounts.  That position also contradicts the terms of the Partnership Agreement and is not supported by the provisions of the IUPA.  Only capital withdrawals should be charged against a partner's capital account.  805 ILCS 206/401(a)(2).

The Partnership Agreement provides for a $2000 salary for each partner in August 2007 and $5000 per month salaries beginning in September 2007. The Debtor's handwritten accounting shows Mr. Speagle received at least $5000 from the partnership each month from August 2007 through March 2008.  The Debtor received at least $5000 from the partnership each month from August 2007 through April 2008.  The Trustee was aware that some portion of the amount received each month by each partner was salary.  He specifically asked the Debtor whether the gross amounts shown as withdrawals on the handwritten accounting included salaries and the Debtor responded affirmatively.

Because the partners agreed to the salaries, the salaries were legitimate partnership expenses and are not chargeable against the partners' capital accounts. *See* Margonis v. Rossi, 116 Ill.App.2d 234, 238, 253 N.E.2d 577, 580 (1969) (agreed salary paid to one partner is deducted as an expense before calculating division of

profits among all partners).  The salaries do not represent capital withdrawals and should not be included in any calculation of the partners' capital accounts.  The exact amount of the salaries paid out cannot, however, be determined from the evidence presented at trial.  It is unclear from the Debtor's testimony whether his distribution to himself of the last $29,000 of partnership funds in April 2008 included any amounts which should be considered as salary.  Without having a precise breakdown of the amounts paid out to the partners for salaries, no precise calculation of the partners' capital accounts can be completed.

In the Partnership Agreement, the partners also agreed that the minimum payments due individually by each partner on their borrowed funds would be paid by the partnership.  Any amounts over and above those minimum payments were, however, to be paid only upon further agreement of the partners.  According to the handwritten accounting, each partner often received more than $5000 per month and, therefore, some amounts may well have been paid on the loans.  No breakdown of the monthly minimum payments due was provided, however, and no evidence was presented about whether the partners agreed to distributions for additional payments on the borrowed funds.  In order to calculate the partners' capital accounts, a breakdown of what was distributed to each partner in repayment of loans and what was distributed as capital withdrawals would have to be known.  Because this information is unknown, an

accurate calculation of the partners' capital accounts cannot be made.

As set forth above, the Trustee relies on §401(a) of the IUPA as authority for his claim against Mr. Speagle.   805 ILCS 206/401(a).   Although that provision does describe how capital accounts are calculated by subtracting capital withdrawals from capital contributions, it does not help the Trustee here.   It is clear from the Partnership Agreement and all of the testimony and exhibits presented that the partners' capital contributions were limited to $5000 each.   No evidence was presented as to the amount of any capital withdrawals made by either partner.   The partners each received money from the partnership, but the evidence establishes that at least some, if not all, of the funds paid out were for salaries and loan payments.   In the absence of any evidence of capital withdrawals, the Trustee's claim based on §401(a) of the IUPA cannot be sustained.   An accounting of the partners' capital accounts cannot be completed based on the evidence presented at trial and, therefore, this Court cannot determine that any amounts are due by Mr. Speagle to the partnership for excess capital withdrawals.

In his post-trial briefs, the Trustee acknowledges that his original analysis which relied exclusively on a capital accounting theory may be inadequate, but suggests that he should still prevail even if the analysis is changed to consider the excess payments

into the partnership by the partners as loans. Payments or advances made by partners in excess of capital contributions are loans to the partnership. 805 ILCS 206/401(e). Unless a partnership agreement provides otherwise, a partner is liable for all partnership obligations. 805 ILCS 206/306(a). Unfortunately for the Trustee, the Partnership Agreement and Termination Agreement do provide otherwise.

The Partnership Agreement provides that the excess payments are to be loans and become debts of Team Automotive. The terms of repayment, however, are limited to minimum monthly payments "with any additional accelerated payoffs of these debts to be determined by the partners[.]" The partners provided that, if the partnership terminated, any remaining assets would be used "to payoff the remaining personal unsecured debts of Brian's and Shane's in equal and just percentages." At trial, the Trustee elicited testimony from both the Debtor and Mr. Speagle that their agreement was that the debts would be paid in full only from the expected proceeds and profits of the business. Both testified that it was never their intention to each become liable for the debts of the other. Thus, although the written Partnership Agreement provides for liability of the partnership and partners for the debts, the understanding of the parties was clearly that each would remain solely liable for their own debt with the partnership being responsible for payments only to the extent funds became available. The partners' conduct

-11-

has been consistent with their testimony and provides additional evidence of their actual agreement. *See* <u>Seymour v. Williams</u>, 249 Ill.App.3d 264, 270, 618 N.E.2d 966, 971 (1993) (terms of partnership agreement may be determined from the acts and conduct of the partners).

The Termination Agreement provides an acknowledgment by both partners that the remaining assets of the partnership are insufficient to pay all debts. Further, both partners agreed that neither would have a right to receive anything further from the partnership. Essentially, the language of the Termination Agreement constitutes a waiver by each partner of his claims against the partnership.

Read together, the Partnership Agreement and the Termination Agreement provide Mr. Speagle with a defense to the Trustee's claims. The original terms of each partner's loans to the partnership were limited to payment from the partnership income and profits and were, therefore, by agreement of the partners, nonrecourse as to the partners individually. The partnership was obligated to repay the loaned amounts, but only from partnership property. The partners' expressed intent was not to create individual liability for each others' debts. Further, even if the partners did have liability to the partnership to pay a share of the partnership debt, each partner waived his claim to collect the debt owed to him from the partnership, thereby effectively

releasing the other partner.  If the partnership no longer owes the partner repayment of the debt, then the other partner cannot be compelled to pay a share of that released debt.

The Trustee now argues that the Termination Agreement should not be read to constitute a release or waiver because there was a lack of consideration for the partners to enter into the Termination Agreement.  But the Trustee failed to prove such lack of consideration.  To the contrary, the Trustee introduced the Termination Agreement into evidence and presented it as the partners' agreement.  The evidence establishes that, at the time the Termination Agreement was signed, the Debtor had just taken the last $29,000 of partnership money and lost it gambling in Las Vegas.  The Debtor agreed to wind up the business affairs and both partners waived their claims against the partnership.  The Debtor testified that Mr. Speagle had no money and, based on the Debtor's bankruptcy filing just weeks later, it appeared he had little money either.  Thus, the partners entered into what they considered to be a fair and final resolution of the issues remaining in their failed business, and this Court cannot say, as a matter of law or fact, that the Termination Agreement fails for lack of consideration. Mr. Speagle waived whatever claims he may have had against the partnership, and the Debtor could have raised that as a defense if Mr. Speagle had filed an action against the Debtor.

The Termination Agreement provides a defense to Mr. Speagle.

-13-

The Trustee cannot prevail in claiming that the partnership owes a debt to the Debtor and, therefore, Mr. Speagle must pay a share of that debt to the Debtor's bankruptcy estate.[2]  The Debtor released the partnership from any claims, and the Trustee is bound by that release.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

### 

---

[2]  It must also be noted that the Trustee's claim that Mr. Speagle owes money to the partnership for repayment of loans made by the Debtor fails due to lack of proof of the amount due on such loans.  Although the gross amount loaned to the partnership by each partner could be calculated from the evidence presented, the balances which were due when the business closed cannot be calculated.  As set forth above, because there was no evidence of the breakdown of the amounts withdrawn by each partner for salaries, loan payments, and capital withdrawals, no accurate calculation of any amount that might have been due on the loans can be made.